**REVERSE and REMAND; and Opinion Filed August 27, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00928-CV

**VICTORIA KERR, Appellant**
**V.**
**PIRF OPERATIONS, LLC DBA ACCEL REHABILITATION HOSPITAL OF PLANO**
**AND JANE DOE, Appellees**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-04279-2017**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Carlyle
Opinion by Justice Molberg

Victoria Kerr appeals the trial court's order dismissing with prejudice her health care

liability claims against PIRF Operations, LLC d/b/a Accel Rehabilitation Hospital of Plano (Accel)

and Jane Doe. In four issues, Kerr contends the trial court erred by dismissing her claims without

granting her a thirty-day extension of time to cure any deficiencies in the medical expert report she

served on Appellees pursuant to the Texas Medical Liability Act (TMLA), TEX. CIV. PRAC. &

REM. CODE ANN. §§ 74.001–.507, arguing: (1) Karis Schirmer, RN, BSN, was qualified to testify

to the applicable standard of care for nurses and nurse assistants; (2) the expert report submitted

by Kerr represented a good faith effort to comply with the statutory requirements of the TMLA;

(3) the trial court should have granted Kerr a thirty-day extension of time to cure any deficiencies

in her expert report; and (4) the trial court's failure to file findings of fact and conclusions of law is presumed harmful.[1]

For the reasons that follow, we conclude Kerr's chapter 74 expert report represented a good faith effort to comply with the statutory requirements of the TMLA, and the trial court should have granted Kerr a thirty-day extension of time to cure any deficiencies in her expert report. Accordingly, we reverse the trial court's order dismissing Kerr's claims with prejudice, and we remand this cause to the trial court with the instruction to grant Kerr a thirty-day extension of time to afford her the opportunity to cure any deficiencies in her chapter 74 expert report, and for further proceedings consistent with this opinion.

## BACKGROUND

### *Factual Background*

The following facts are drawn from the allegations in Kerr's petition. Kerr filed this lawsuit against Appellees after she fell in a shower at Accel, sustaining severe injuries to her lumbar spine, pelvis, knees, toes, and jaw. Kerr sustained these injuries after her admission to and while under the care of Accel.

Kerr was admitted to Accel on July 7, 2015, for inpatient rehabilitation to regain "mobility and Activities of Daily Living." Upon her admission, Accel assessed Kerr as "a moderate fall risk." Accordingly, Accel employed fall precautions for Kerr's stay, including assistance during bathing. Four days later, on July 11, Kerr was assessed as "an extreme fall risk."[2] Accel assigned a hospital staff person (Jane Doe) to assist Kerr while she showered. Later that day, Jane Doe left Kerr alone while Kerr was showering. While unattended, Kerr fell and sustained a compression

---

[1] The trial court, in fact, did make findings of fact and conclusions of law.

[2] The expert report of Karis Schirmer, RN, BSN, reflected that Accel's medical chart on Kerr indicated that, beginning on July 7 and thereafter, every post-admission nursing assessment designated Kerr as a "high fall risk."

fracture of her L1 vertebrae, a torn meniscus in her right knee, gashes on and nerve damage to both of her big toes, and a broken jaw.

The petition alleges Appellees were negligent and grossly negligent by leaving Kerr unattended in the shower, which resulted in the fall. The petition also alleges Accel was negligent and grossly negligent in failing to adequately "screen, train, and supervise Jane Doe."

The petition alleges that, as a direct and proximate result of Appellees' negligence and gross negligence, Kerr sustained specified injuries to her neck, back, pelvis, knees, toes, and jaw. The petition seeks damages for reasonable and necessary past medical care and expenses, past and future physical pain and suffering, and past and future mental pain and anguish. Alleging that Appellees' acts and omissions constituted gross negligence, as they were committed knowingly, intentionally, and recklessly, the petition seeks exemplary damages as permitted under section 41.003(a)(3) of the Texas Civil Practice and Remedies Code.

*Procedural History*

Kerr filed her petition on September 5, 2017. Accel filed an answer on September 27, 2017. Because this lawsuit involves a health care liability claim, it is subject to the requirements of chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507. In accordance with chapter 74, Kerr served on Accel the expert report and curriculum vitae of Karis Schirmer, RN, BSN (Schirmer Report), on February 11, 2018.[3] Kerr did not serve an expert report from a physician. On March 2, 2018, Accel filed "Objections to Plaintiff's Inadequate Chapter 74 Expert Report and Motion to Dismiss" (motion to dismiss). In its motion to dismiss, Accel argued:

- The Schirmer Report failed to identify any injuries sustained by Kerr.

---

[3] In its motion to dismiss, Accel stated that it agreed to a thirty-day extension of time for Kerr to file a chapter 74 expert report.

–3–

- The Schirmer Report failed to identify the standard of care applicable to a rehabilitation hospital.

- The Schirmer Report failed to discuss the "nursing standard of care" with specificity. By way of example, Appellees argued, "the Schirmer Report does not attempt to explain what it means for Defendant to be 'by patient's side.'"

- The Schirmer Report failed to sufficiently describe how Appellees breached the standard of care.

- The Schirmer Report failed to discuss how any breach in the standard of care proximately caused Kerr's injuries.

- Schirmer was unqualified to opine as to causation because she is a nurse practitioner and not a physician.

In her March 26, 2018 reply to Accel's motion to dismiss, Kerr argued that she submitted the Schirmer Report in good faith, but, in the event the trial court deemed her expert report deficient, Kerr requested a thirty-day extension of time to cure the deficiency under section 74.351(c). After a hearing on Accel's motion to dismiss, the trial court sustained Accel's objections and granted Accel's motion to dismiss, dismissing the case with prejudice by order dated May 30, 2018.

## THE TEXAS MEDICAL LIABILITY ACT

*Chapter 74's Expert Report Requirement*

Chapter 74 of the TMLA requires a plaintiff pursuing a health care liability claim to serve an expert report on each physician or health care provider against whom a health care liability claim is asserted no later than 120 days after the date each defendant's answer is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The purpose of the expert report requirement is "to eliminate frivolous health care liability claims" and "preserve those of potential merit." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (Medina, J.); *see also Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

–4–

"Expert report" is defined as:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). A report meets the requirements of chapter 74 if it represents an "objective good faith effort to comply with" the statutory definition. *Id.* § 74.351(l). To constitute a "good faith effort," the expert report must: (1) "inform the defendant of the specific conduct" complained of, and (2) "provide a basis for the trial court to conclude that the claims have merit." *Scoresby*, 346 S.W.3d at 555–56 (quoting *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)).

The trial court may grant a motion challenging the adequacy of an expert report only if the report does not accomplish these two goals. *Scoresby*, 346 S.W.3d at 555–57. To that end, the report must include a summary of the expert's opinion on the three elements required by chapter 74: (1) the applicable standard of care, (2) the manner in which the defendant failed to meet the standard of care, and (3) the causal relationship between the defendant's failure to meet the standard of care and the plaintiff's injury, harm, or damages. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

*Trial Courts Must Be Lenient In Granting*
*A Thirty-Day Extension of Time to Cure a Deficient Expert Report*

Because the purpose of the expert report requirement is to "deter baseless claims, not to block earnest ones," *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013), the TMLA provides an opportunity for a plaintiff to cure any deficiencies in an expert report: "[If] elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). While section

–5–

74.351(c)'s use of the word "may" indicates the trial court has some discretion in granting an extension to cure any deficiencies, the supreme court has circumscribed that discretion. Recognizing that the TMLA provides no guidance on how the trial court may exercise its discretion, the supreme court requires the trial court's decision to grant or deny a request for an extension of time to be governed by the "broader" and "overriding" purpose of the TMLA: to eliminate frivolous claims and preserve meritorious ones. *See Scoresby*, 346 S.W.3d at 554; *Samlowski*, 332 S.W.3d at 410–11.

Implicitly acknowledging the Texas Constitution's open courts provision, TEX. CONST. art. I, § 13 (persons bringing common law claims will not be unreasonably denied court access), in *Scoresby*, the supreme court cautioned, "It must be remembered that '[t]here are constitutional limitations upon the power of courts [to] dismiss an action without affording a party the opportunity for a hearing on the merits of his cause[,]' and those limitations constrain the Legislature no less in requiring dismissal." 346 S.W.3d at 554 (quoting *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991)). In the same vein, *Samlowski* emphasizes that while the legislature enacted the TMLA, in part, to reduce frivolous lawsuits, it "intended to do so in a manner that will not unduly restrict a claimant's rights." 332 S.W.3d at 416 (Guzman, J., concurring) (quoting *Leland v. Brandel*, 257 S.W.3d 204, 208 (Tex. 2008)). Consequently, the supreme court has admonished trial courts to be "lenient" in granting an extension of time to cure a deficient chapter 74 expert report. *Scoresby*, 346 S.W.3d at 554 (the thirty-day "minimal delay before a report's sufficiency may again be challenged and the case dismissed does not impair the purpose of the [TMLA]").

Issued merely four months after *Samlowski*, *Scoresby*'s admonishment for leniency underscores the majority court's directive in *Samlowski* that trial courts "should [g]rant an

extension when a deficient expert report can readily be cured and deny the extension when it cannot." *Samlowski*, 332 S.W.3d at 411 ("a deficient report does not invariably require dismissal of the underlying claim"); *id.* at 416 (Guzman, J., concurring), 419 (Wainwright, J., concurring); *see also Scoresby*, 346 S.W.3d at 554 ("when an expert report can be cured in thirty days, the claim is not frivolous"). Even more to the point, the majority court in *Samlowski* prescribes that "trial courts should err on the side of granting claimants' extensions to show the merits of their claims." *Id.* at 411–12 (Medina, J.), 416 (Guzman, J., concurring); *see also Scoresby*, 346 S.W.3d at 549 (adopting position taken by a plurality of the court in *Samlowski*). "The right answer in many cases will be for the trial court to grant one thirty-day extension upon timely request and be done with it." *Samlowski*, 332 S.W.3d at 411–12. As stated in Justice Guzman's concurring opinion in *Samlowski*, "The price of preserving a meritorious claim will be thirty days, compared to a much higher price of dismissal." *Id.* at 416.

*A Deficient But Curable Expert Report Requires the Trial Court*
*to Grant an Extension of Time to Cure*

Because *Samlowski* limits the discretion afforded to the trial court in the matter of granting an extension of time under section 74.351(c),[4] we must "distinguish between deficient reports that demonstrate merit and deficient reports that do not." *Id.* at 412. The decision on whether a plaintiff may cure a chapter 74 expert report may hinge on what best serves the "interests of justice." *Id.* In *Samlowski*, the Texas Supreme Court affirmed the appellate court's conclusion that the trial court abused its discretion by denying a request for an extension of time to cure the expert report and the appellate court's remand of the case to the trial court with the instruction to grant a thirty-day extension of time to cure. There was no majority opinion, because although a majority of the

---

[4] A majority of the court in *Samlowski* agreed that a trial court's discretion under section 74.351(c) is not unfettered. 332 S.W.3d at 409 (Medina, J.), 414 (Guzman, J., concurring).

court agreed the court of appeals correctly remanded the cause with an order to permit an extension of time to cure, there was no majority reasoning for why remand was proper.

In *Samlowski*, the supreme court issued its judgment and four corresponding opinions. The plurality and concurring opinions reiterated chapter 74's purpose of preserving potentially meritorious claims. To that end, a majority of the *Samlowski* court instructed, "[T]rial courts should err on the side of granting claimants' extensions to show the merits of their claims." 332 S.W.3d at 411–12; *id.* at 416 (Guzman, J., concurring) ("In order to preserve the highest number of meritorious claims, trial courts should err on the side of granting claimants' extensions to show the merits of their claims."). While a majority of the court did not agree on the criteria a trial court should use in deciding whether to grant an extension of time under section 74.351(c), a majority did agree that a trial court must grant an extension of time to cure when the plaintiff demonstrates or the record establishes that the deficiencies in the expert report could be cured. *Id.* at 411 (Medina, J.), 415–16 (Guzman, J., concurring). The supreme court hammered home this requirement four months later in *Scoresby*, stating that trial courts "must" grant a thirty-day extension of time "if deficiencies in an expert report can be cured within the thirty-day period." 376 S.W.3d at 554.

Therefore, the curability of Kerr's expert report is our paramount concern in determining whether the trial court abused its discretion in this case by denying her request for an extension of time under section 74.351(c). *Id.* Our ultimate goal in resolving this question is to serve the interests of justice and preserve Kerr's health care liability claims if we see any potential merit. *Samlowski*, 332 S.W.3d at 410–12; *see also Scoresby*, 346 S.W.3d at 558 (claimant must be assured of "a fair opportunity to cure any deficiencies and demonstrate that his claim is not frivolous and should be determined on the merits.").

## ANALYSIS

### *Standard of Review*

We review a trial court's denial of a request for an extension of time to cure a deficient chapter 74 expert report for an abuse of discretion. *Biggs v. Baylor Univ. Med. Ctr.*, 336 S.W.3d 854, 859 (Tex. App.—Dallas 2011, pet. denied). A trial court abuses its discretion by denying a section 74.351(c) request for an extension of time if the claimant demonstrates or the record establishes that the defects in the report could be cured. *Id.*

### *The Schirmer Report*

In her first issue, Kerr contends Schirmer is an expert qualified to testify to a departure from the standard of care applicable to nurses and nursing assistants under section 74.402(b). TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b). In her second issue, Kerr contends the Schirmer Report represented a good faith effort to comply with section 74.351(r)(6) by informing Appellees of the specific conduct subject of Kerr's claims and by providing a basis for the trial court to conclude Kerr's claims have merit. *See id.*

In the curriculum vitae attached to her expert report, Schirmer stated her qualifications, which include staff positions as a nurse practitioner, various supervisory positions in hospitals and medical care and emergency facilities, supervising medical staff, as well as serving as a director of several departments in hospitals and medical care and emergency facilities. In her expert report, Schirmer indicates the opinions expressed in her report are based on her review of Kerr's medical chart from Accel.

The Schirmer Report opined on all three required elements of an adequate expert report under chapter 74: the standard of care Accel and its staff owed to Kerr, the manner in which Accel and its staff breached that standard of care, and how the breach caused Kerr's injuries. Specifically, the Schirmer Report identified and described Accel's assessments of Kerr's pre-

admission condition and Kerr's specific care and support needs while at Accel. The Schirmer Report also chronicled daily medical notes made by Accel's nurses, physical therapists, and a physician, all of which warned Accel's staff that Kerr not only was at "high risk" of falling, but also that she was, in fact, "frequent[ly] falling." These medical notes alerted Accel's staff that Kerr required continuous and unabated assistance with all acts of daily living and ambulation, including sitting and standing. The Schirmer Report identified the deficiencies in Accel's care of Kerr, and it generally stated that Accel's acts and omissions caused Kerr's injuries.

The Schirmer Report described Accel's July 6, 2015 pre-admission screening records, which documented that Kerr suffered from multiple sclerosis; she "was having frequent falls"; and she "required 24/7 nursing care" for "ambulation" and the activities of daily living, including "bowel and bladder management, cognition, communication, disease management, medication management, 'providing a safe environment,' and 'transfers.'" Upon her admission to Accel on July 7, 2015, a nursing evaluation assessed Kerr as a moderate fall risk under the "Morse Fall Scale."[5]

A nursing assessment later that day, however, re-assessed Kerr as a "high fall risk." Schirmer's review of Accel's medical records showed that, "Every subsequent nursing assessment beginning on 07/07/15 7 pm to 7 am shift rates [Kerr] as a high fall risk." Accel's July 8, 2015 "History and Physical" records "noted again [that Kerr] was having frequent falls and noted she had 'deficits of endurance, balance, locomotion, safety awareness, transfer control, and self-care.'" A physician evaluation on the same day stated Kerr "requires 24/7 Rehabilitation nursing for assisting with ambulation and transfer, assisting with all activities of daily living, assisting with ambulation and transfer." Physical therapy notes on July 9, 2015 stated Kerr "is requiring constant

---

[5] The Schirmer Report indicated a copy of the Morse Fall Scale was attached to the report.

checks for safety as she has poor safety awareness." Physical therapy notes on the following day, July 10, stated Kerr "is now requiring maximum assistance to sit or stand."

The Schirmer Report provided the applicable standard of care:

> [Kerr] was known and well documented to be a high fall risk. The nursing standard of care for a patient with generalized weakness from Multiple Sclerosis and frequent falls would have to be in attendance at their side to ensure patient safety.

The Schirmer Report stated how Accel and its employees breached the standard of care: "On 7/11/15 . . . a certified nursing assistant aided [Kerr] to the shower and left her without assistance at which time she fell sustaining injuries." The Schirmer Report then attempted to explain how Accel's breach of the standard of care caused Kerr's injuries: "[Kerr] being left alone in the shower and known to be a high fall risk is directly related to the fall and would fall outside of a basic standard of care."

### Schirmer Was Qualified to Opine On the Standard of Care Owed By Nurses and Nurse Assistants

In her first issue, Kerr contends Schirmer is an expert qualified under section 74.402(b) to opine on the standard of care applicable to nurses and nursing assistants and on how Accel's nursing staff breached the duty of care. TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b). Specifically, Kerr argues that, as a registered nurse with a bachelor of science degree in nursing and thirty-five years of nursing experience—including in staffing, supervising, and administration—Schirmer "is more than qualified to render an opinion as to whether leaving a patient identified as a high fall risk alone in a shower deviates from the standard of care for nurses and nursing assistants."

In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

–11–

(1)  Is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2)  Has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) Is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(1)–(3).

An expert who gives an opinion on causation, however, must be a licensed physician and must be otherwise qualified to give an opinion on the causal relationship under the Texas Rules of Evidence.  *Id.* § 74.403(a).  An expert witness may be qualified to opine on one issue but not on another.  *Id.* § 74.351(i); *In re Buster*, 275 S.W.3d 475, 477 (Tex. 2008).  Significantly, "[a] report by an unqualified expert will sometimes (but not always) reflect a good-faith effort sufficient to justify a 30-day extension."  *Id*.

Schirmer's curriculum vitae demonstrates she is a registered nurse holding both an Associate of Science degree in nursing and a Bachelor of Science degree in nursing.  Schirmer has worked as a nurse and nursing supervisor in a number of medical facilities, including Metroplex PACU and ICU, Texoma Medical Center, Medical Center McKinney, Texas Health Resources Intensive Care Unit (supervisor), and Wilson N. Jones Hospital Medical Intensive Care Unit (supervisor).  Schirmer was Director of the Methodist Medical Surgical Unit and Emergency, where, among other duties, she was responsible for maintaining compliance with standards promulgated by the Joint Commission on Accreditation of Healthcare Organizations and Nursing Standards of Care.  As Director of Acute Care at Community Medical Center Sherman, Schirmer was responsible for, among other things, managing, scheduling, and evaluating staff.  We conclude Schirmer was qualified to opine on the first two elements of a chapter 74 expert report—the

standard of care owed by Accel's nurses and nurse assistants and their breach of the standard of care.

Although Schirmer was not qualified to opine on causation under chapter 74 because she is not a physician, that fact does not render her report otherwise incompetent as to the other requisite elements for a chapter 74 expert report. The Schirmer Report admittedly is deficient as to the causation element, but the deficiency is curable. Kerr only need retain a qualified physician to opine that Kerr fell because she was not properly monitored and assisted while she showered, and that her fall caused the specific injuries alleged in her complaint. *See Buster*, 275 S.W.3d at 477 (trial court properly allowed extension of time to cure where deficient report was by a nurse rather than a physician).[6]

We resolve Kerr's first issue in her favor.

### *Kerr's Expert Report Was a Good Faith Effort to Comply with Chapter 74*

In her second issue, Kerr contends the Schirmer Report represented a good faith effort to comply with section 74.351(r)(6) by informing Appellees of the specific conduct subject of Kerr's claims and by providing a basis for the trial court to conclude Kerr's claims have merit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Specifically, Kerr argues that Accel's "nurse or nursing assistant departed from accepted standards of health care [by] leaving a high fall risk Plaintiff alone in a shower," and Kerr fell in the shower as a direct result of Jane Doe's breach of

---

[6] After all, the nature of the fall and the resulting injuries here are not complex. In any traditional circumstance, it is doubtful whether expert testimony would be required at all to establish causation in this case, where causation is within the common knowledge and experience of jurors. *See, e.g.*, *Jelinek v. Casas*, 328 S.W.3d 526, 533–34 (Tex. 2010) (non-expert evidence sufficient "where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence"); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (lay testimony sufficient where "general experience and common sense will enable a layman to determine . . . the causal relationship between the event and the condition"); *Chang v. Denny*, No. 05-17-01457-CV, 2019 WL 3955765 (Tex. App.—Dallas Aug. 22, 2019, no pet.) (mem. op., not released for publication) (lay testimony can establish causation where it is within the common understanding of jurors).

that duty. In her third issue, Kerr contends the trial court should have granted Kerr a thirty-day extension of time to cure any deficiencies in her expert report.

The facts alleged in this case are not complicated. Kerr's petition and the Schirmer Report provide a clear picture of what happened to Kerr and why she filed suit against Appellees. The Schirmer Report alone provided sufficient detail to inform Accel of the nature and factual basis of Kerr's claims. Kerr has multiple sclerosis. Even before admitting her, Accel knew Kerr "was having frequent falls" and "required 24/7 nursing care," including for "ambulation" and the "activities of daily living." Kerr was assessed as a moderate fall risk upon her admission to Accel, but the very same day, she was re-assessed by Accel nursing staff as a high fall risk. Accel's physical therapy records caution that, among other things, Kerr "was having frequent falls" and "deficits of endurance, balance, [and] locomotion." Accel knew Kerr needed to be supervised for all acts of daily living, walking, and standing. Two days before Kerr fell, unsupervised, in the shower, physical therapy notes warned, "[Kerr] is requiring constant checks for safety as she has poor safety awareness." An Accel physician evaluation ordered that Kerr "requires 24/7 Rehabilitation nursing for assisting with ambulation and transfer, assisting with all activities of daily living." The day before Kerr fell when Jane Doe left her alone in the shower, Accel's physical therapy notes alerted the medical staff that Kerr "is now requiring maximum assistance to sit or stand."

As reflected in Accel's own nursing, physician, and physical therapy records, the standard of care Accel owed to Kerr was "24/7 nursing care," "maximum assistance to sit or stand," "assist[ance] with all activities of daily living," "assist[ance] with ambulation and transfer," and "constant checks for safety," because Kerr was a "high fall risk," Kerr was having "frequent falls," and Kerr had "deficits of endurance, balance, locomotion, safety awareness, transfer control, and

–14–

self-care." In accord with the standard of care ordered by Accel's physicians, physical therapists, and nursing staff, the Schirmer Report plainly stated, "The nursing standard of care for a patient with generalized weakness from Multiple Sclerosis and frequent falls would have to be in attendance at their side to ensure patient safety." The Schirmer Report stated that Appellees breached the standard of care by leaving Kerr "alone in the shower."

There is no question that the Schirmer Report was deficient insofar as the TMLA requires a physician to opine as to causation. Nevertheless, given all of the warnings and orders promulgated by a range of Accel's medical staff, it is not surprising that the Schirmer Report stated that Kerr "being left alone in the shower and known to be a high fall risk is directly related to the fall." Although Schirmer did not use the word "caused," no magic words are required. *See Scoresby*, 346 S.W.3d at 556. The Schirmer Report's meaning was clear. Kerr fell in the shower because she was not receiving the assistance that Accel's medical staff had repeatedly stated was necessary for Kerr's safety. She was left alone in a shower when she needed "maximum assistance to sit or stand." While this portion of the Schirmer Report was deficient, Kerr's expert report did not entirely fail to address the causation element. Schirmer just was not qualified to render that opinion—a deficiency that Kerr should "be given an opportunity to cure." *Scoresby*, 346 S.W.3d at 449 ("An individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so."); *see also Buster*, 275 S.W.3d at 477 (report by unqualified expert may reflect good-faith effort sufficient to justify thirty-day extension of time to cure).

As the statute has been applied, not only should Kerr's expert report opine that Accel's breach of its duty of care caused Kerr to fall while she was left unattended in the shower, but the report also should opine that the specific injuries alleged in the petition were caused by Kerr's fall.

These omissions, however, are exactly the type of deficiencies that may be cured under section 74.351(c). As Justice Guzman stated in *Samlowski*:

> [T]he provision allowing for an extension is not punitive—it says nothing about withholding an extension when a claimant has failed to do something. Rather, the provision is curative, intending to give claimants an opportunity to save their claims from dismissal.

332 S.W.3d at 416 (Guzman, J., concurring).

The Schirmer Report provided enough information to inform Accel of the specific conduct Kerr complains of, and it provided a basis for a court to conclude Kerr's claims have merit. *See Scoresby*, 346 S.W.3d at 556. Moreover, the Schirmer Report gave Accel clear notice of the basis of Kerr's claims and the kind of evidence it will need to marshal for its defense. Because the deficiencies in the Schirmer Report are readily curable, the report does not indicate Kerr's claims are frivolous. *See Scoresby*, 346 S.W.3d at 556. To the contrary, the expert report manifests the merit of Kerr's claims.

In light of *Scoresby* and *Samlowski* and the TMLA's silence "on the principles and procedure that should control the trial court's discretion" under 74.351(c), we conclude the Schirmer Report constituted an objective, good faith effort to comply with the statutory requirements of chapter 74, despite its deficiency in failing to include a physician's report addressing causation, which is curable. *Scoresby*, 346 S.W.3d at 556; *Samlowski*, 332 S.W.3d at 411. Therefore, the trial court's failure to grant Kerr an extension of time to cure any deficiencies in the expert report was an abuse of discretion. *See Samlowski*, 332 S.W.3d at 416 (Guzman, J., concurring). Accordingly, we resolve Kerr's second and third issues in her favor.

We reverse the trial court's order dismissing Kerr's claims with prejudice, and we remand this cause to the trial court with the instruction to grant Kerr a thirty-day extension of time to afford

her the opportunity to cure any deficiencies in her chapter 74 expert report, and for further proceedings consistent with this opinion. [7]

/Ken Molberg/
KEN MOLBERG
JUSTICE

180928F.P05

---

[7] Based upon our resolution of Kerr's first, second, and third issues, we need not address Kerr's fourth issue. TEX. R. APP. P. 47.1.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

VICTORIA KERR, Appellant

No. 05-18-00928-CV          V.

PIRF OPERATIONS, LLC DBA ACCEL
REHABILITATION HOSPITAL OF
PLANO AND JANE DOE, Appellee

On Appeal from the 219th Judicial District
Court, Collin County, Texas

Trial Court Cause No. 219-04279-2017.
Opinion delivered by Justice Molberg.
Justices Myers and Carlyle participating.

In accordance with this Court's opinion of this date, the order of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court with the instruction to grant appellant a thirty-day extension of time to afford her the opportunity to cure any deficiencies in her expert report, and for further proceedings consistent with this opinion.

It is **ORDERED** that appellant VICTORIA KERR recover her costs of this appeal from appellee PIRF OPERATIONS, LLC DBA ACCEL REHABILITATION HOSPITAL OF PLANO AND JANE DOE.

Judgment entered this 27th day of August, 2019.